THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : 3:19-CR-255 |
| | : (JUDGE MARIANI) |
| GREGORY ROSSI, | : |
| | : |
| Defendant. | : |

## MEMORANDUM OPINION

### I. INTRODUCTION AND PROCEDURAL HISTORY

On September 3, 2019, a federal grand jury indicted Defendant Gregory Rossi for Stalking (Count I) and for being a Prohibited Person in Possession of a Firearm and Ammunition (Count II). (Doc. 1). Rossi entered into a signed plea agreement on November 21, 2019 (Doc. 21) and pleaded guilty to Count I of the Indictment (Stalking) before the late Judge James Munley on December 16, 2019. In April of 2021, the undersigned sentenced Defendant to a term of 30 months imprisonment to be followed by three years of supervised release. Rossi began his three-year term of supervised release on October 12, 2021.

Presently before the Court is Defendant Rossi's Motion for Early Termination of Supervised Release (Doc. 72), filed approximately 19 months into his 36-month term of supervised release. The parties have fully briefed the motion and the Court has additionally

requested and received the position of Rossi's probation officer.[1] The motion is thus ripe for disposition. For the reasons that follow, Defendant's motion will be denied.

## II. ANALYSIS

"[T]he primary purpose of supervised release is to facilitate the integration of offenders back into the community rather than to punish them." *United States v. Murray*, 692 F.3d 273, 280 (3d Cir. 2012) (quoting *United States v. Albertson*, 645 F.3d 191, 197 (3d Cir. 2012)). Congress has thus provided the sentencing court with the authority to terminate a defendant's term of supervised release early. *See Burkey v. Marberry*, 556 F.3d 142, 146 n.3 (3d Cir. 2009) ("Pursuant to 18 U.S.C. § 3583(e), only the sentencing court has the authority to modify [a defendant's] term of supervised release"). Pursuant to 18 U.S.C. § 3583, "[t]he court may, after considering the factors set forth in [18 U.S.C. §] 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). "'The expansive phrases "conduct of the defendant" and "interest of justice" make clear that a district court enjoys discretion to consider a wide range of circumstances

---

[1] In a memorandum to the Court addressing Defendant's motion, Defendant's probation officer confirms that Defendant has been compliant with the conditions of release but recommends that Rossi be ordered to complete his term of supervised release.

2

when determining whether to grant early termination.'" *United States v. Melvin*, 978 F.3d 49, 53 (3d Cir. 2020) (quoting *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014)).

The § 3553(a) factors cited in § 3583(e)(1) are as follows:

(1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the need to afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide him with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentence and sentencing range established for the defendant's crimes; (4) pertinent policy statements issued by the United States Sentencing Commission; (5) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (6) the need to provide restitution to any victims of the offense.

*Melvin*, 978 F.3d at 53 (quoting *United States v. Davies*, 746 F.App'x 86, 88-89 (3d Cir. 2018)). "[I]t is notable that the only traditional sentencing factor *not* relevant to a court's decision of whether to impose supervised release . . . is the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense. . . . This omission reinforces the idea that the primary purpose of supervised release is to facilitate the reentry of offenders into their communities, rather than to inflict punishment." *Murray*, 692 F.3d at 280 (internal quotation marks, citations, and brackets omitted).

When weighing the relevant § 3553(a) factors and considering a defendant's motion for early termination of supervised release, "a district court need not find that an exceptional, extraordinary, new, or unforeseen circumstance warrants early termination of a term of supervised release before granting a motion under 18 U.S.C. § 3583(e)(1)." *Melvin*, 978

F.3d at 53. However, "'*generally*, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F.App'x at 89) (emphasis in *Melvin*).

Here, Defendant Rossi pleaded guilty to Stalking in violation of 18 U.S.C. § 2261A. Pursuant to the Pre-Sentence Report ("PSR"), to which Defendant did not object, Defendant engaged in a lengthy and continuous pattern of harassing and threatening conduct towards his ex-girlfriend, Jennifer Kennedy, from August of 2018 through the time of his arrest in August of 2019, including the following:

> In summer 2017, Jennifer Kennedy ended a four-year relationship with Gregory Rossi. In spring 2018, Gregory Rossi made repeated telephone calls and sent multiple emails to Jennifer Kennedy. He also frequently drove past her residence. On August 7, 2018, Jennifer Kennedy emailed Gregory Rossi requesting he cease any type of contact with her. On August 12, 2018, Gregory Rossi sent her 18 emails, some that contained obscene language and images. On August 13, 2018, Jennifer Kennedy sent a second email to Gregory Rossi requesting he stop contacting her. Later that day, Jennifer Kennedy received 41 emails from Gregory Rossi.
>
> [ ] On August 13, 2018, Jennifer Kennedy filed a petition for Protection From Abuse (PFA) in the Luzerne County (Wilkes-Barre) Court of Common Pleas. On August 21, 2018, a temporary PFA was granted and prohibited Gregory Rossi from having any contact with Jennifer Kennedy and from possessing any firearms or other weapons. Following the official entry of the order, Jennifer Kennedy received multiple telephone calls and emails from an unknown telephone number and email address.
>
> [ ] Jennifer Kennedy and her boyfriend went out for dinner to a pizza restaurant on September 21, 2018. When they returned home, the restaurant had six trays of pizza delivered to them from an unknown male individual that had placed the order with the restaurant.

[ ] On October 1, 2018, Jennifer Kennedy filed a complaint with the Sugarloaf (Pennsylvania) Township Police Department that a social media account was created on the Internet under an anonymous identity and contained images of Jennifer Kennedy wearing provocative clothing as well as photographs of her partially naked. Jennifer Kennedy's boyfriend received messages from the account stating that Jennifer Kennedy was "a whore."

[ ] Jennifer Kennedy received text messages in November 2018 from an unknown telephone number informing her that she was being followed and that her location was known at all times. The text messages also included requests for Jennifer Kennedy to have the PFA removed with the Court.

[ ] On January 2, 2019, Hazleton (Pennsylvania) Police Department officers were contacted by Jennifer Kennedy regarding possible tampering of her vehicle. Further investigation revealed that the defendant ordered two Global Positioning System (GPS) tracking devices from the Internet and had them mailed to his home. He surreptitiously placed the devices on Jennifer Kennedy's vehicle and her boyfriend's vehicle. Gregory Rossi received location notifications on his electronic devices.

(Doc. 60, ¶¶ 7-12). Between April 2019 and August 2019, Rossi sent several threatening emails to Kennedy and in August 2019, Rossi contacted Kennedy via telephone between 20 to 60 times daily. (*Id.* at ¶¶ 13, 14). When police officers executed a search warrant at Rossi's residence in Hazleton on August 27, 2019, they seized approximately 40 firearms and thousands of rounds of ammunition, and a search of his vehicle revealed a loaded handgun. (*Id.* at ¶ 15).

Prior to Defendant's arrest in August of 2019, he was employed as a Pennsylvania state police trooper from 2004 to January of 2019. He had previously been a police officer in the city of Hazleton from 1997 to 2004. (Doc. 60, ¶¶ 56, 57).

Defendant Rossi's present motion argues that since his release from prison in October, 2021, he has abided by all of the terms of his supervised release, has maintained employment, and has had no contact with the victim. (Doc. 73, at 2). Defendant states that he is employed as a truck driver whose deliveries are largely outside of the Middle District of Pennsylvania and that he must contact his probation officer on "almost" a daily basis to advise of his work assignments, which provides an "added level of complexity of almost daily contact with the probation officer" that he would like to avoid. (*Id.* at 2-3). Although Rossi acknowledges that his case "presents an added concern because it involved a victim who resides in the same city" as him, he asserts that he "presents no danger to the victim and has absolutely no desire to communicate with or have any form of contact with her" as demonstrated by the fact that he has purportedly not contacted, or attempted to contact, her since at least September of 2019 when the case was initiated. (*Id.* at 3).

The Government and the victim "adamantly oppose early termination of Supervised Release in this case." (Doc. 74, at 2).

Upon consideration of the statutory factors, Defendant's motion will be denied.

Preliminarily, there is no evidence that "new or unforeseen circumstances" have arisen warranting the early termination of Defendant's supervised release.[2] Rather,

---

[2] This Court recognizes that the Third Circuit has "disavow[ed] any suggestion that new or unforeseen circumstances *must* be shown", *Melvin*, 978 F.3d at 53 (emphasis added), but it is nonetheless one of a number of factors that this Court should consider in determining the merits of Defendant's motion. *See e.g. id.* ("We think that [g]*enerally*, early termination of supervised release under § 3583(e)(1) will be proper only when the sentencing judge is satisfied that new or unforeseen circumstances warrant it. That is because, if a sentence was 'sufficient, but not greater than necessary' when first pronounced, 18 U.S.C. §

6

Defendant Rossi has simply done what is required of him while on supervised release. Mere compliance with the terms of his supervised release does not entitle Defendant to early termination of his three-year term of supervised release. *See e.g., United States v. Laine*, 404 F.App'x 571, 573-574 (3d Cir. 2010) ("Simple compliance with the conditions of supervised release are expected and not exceptional") *abrogated by United States v. Melvin*, 978 F.3d 49 (3d Cir. 2020); *United States v. Welling*, 2021 WL 409834, *4 (W.D. Pa. 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct, is *required* behavior while serving a term of supervised release.") (citing *United States v. Banks*, 2015 WL 926534, at *4 (W.D. Pa. 2015)) (emphasis in original).

The events underlying Rossi's offense for which he pleaded guilty, specifically a year-long campaign of continuous harassment and threats towards his ex-girlfriend, which included threatening voicemails and emails, and the placement of GPS devices on the cars of his ex-girlfriend and her new boyfriend, even following the issuance of a PFA against him, all present circumstances weighing in favor of continuing Defendant's supervised release. Defendant's behavior is even more troubling when taking into account his two-decade long career as a law enforcement officer. Defendant's continued lack of contact with the victim in this case is better guaranteed where oversight and restrictions remain in place. Continued supervised release provides possible deterrence to further criminal conduct, *i.e.* harassing

---

3553(a), we would expect that something will have changed in the interim that would justify an early end to a term of supervised release.") (some internal citations and quotation marks omitted) (emphasis in original).

7

and threatening conduct towards his ex-girlfriend or other individuals, and works to aid in the protection of his ex-girlfriend and other members of the public, to the extent possible. Defendant's abstention from contact with his ex-girlfriend since his release from prison may in fact demonstrate the desired deterrent effect of the supervised release on Defendant to refrain from engaging in further unlawful behavior. *See e.g. United States v. Miles*, 2020 WL 4904019, *3 (W.D. Pa. 2020) ("Indeed, the fact of compliance may very well mean that supervision is serving its deterrent and rehabilitative purposes and continuation of it to full term will achieve its desired effects on the supervised individual and community.").

Furthermore, although Defendant's probation officer reports that Defendant has satisfied his mental health treatment condition, remaining on supervised release ensures that Defendant may be monitored and provided, if necessary, any further needed mental health therapy as recommended in the PSR (*see* Doc. 60 ("[Rossi] was diagnosed with 'an adjustment disorder with mixed emotional features once his significant other broke up with him and started dating another individual. He did show some personality traits and features that are likely to make him vulnerable to behavioral and affective difficulties from time to time. Namely, obsessive compulsive, histrionic and narcissistic personality styles may help facilitate difficulties in his relationships and interactions with others. It would seem reasonable to recommend that upon release he engage in regular psychotherapy visits in order to gain more insight and self-control with respect to their effects on his patterns of thought and action.'") (quoting mental health evaluation by Drs. Fischbein and Church)).

Finally, despite Defendant's grievance that he must contact his probation officer on "almost" a daily basis to advise of his work assignments (*see* Doc. 73), as noted by the Government, "[w]henever [Rossi's] job takes him outside the district, he notifies his supervising officer in the morning where he is going via text message [and] Rossi does not even need to wait for a response" (Doc. 74, at 5). The Court agrees with the Government that this is a "very little inconvenience" (*id.*) and finds that Rossi faces a minimal burden in being required to text his supervising officer on a regular basis, a task which presumably amounts to no more than one or two minutes of Rossi's time in a day.

For these reasons, and upon consideration of all of the relevant statutory factors, the specific facts and circumstances of this case, and the arguments presented in the parties' briefs, the Court finds that the purposes to be served by the imposition of supervised release by the Court have not yet been satisfied at this time. Consideration of the relevant § 3553 factors weigh heavily in favor of requiring Defendant to serve the remaining term of his supervised release. Defendant's motion will therefore be denied.

### III. CONCLUSION

For the foregoing reasons, Defendant Rossi's Motion for Early Termination of Supervised Release (Doc. 72) will be denied. A separate order follows.

Robert D. Mariani
United States District Judge